**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JEREMIAH MOORE, *et al.*,        :
      Plaintiff,             :
                          :
      v.                   :       **CIVIL ACTION NO. 21-CV-2695**
                          :
DEPARTMENT OF CORRECTIONS,     :
*et al.*,                    :
      Defendants.          :

**<u>MEMORANDUM</u>**

SÁNCHEZ, C.J.                                              **JUNE 22, 2022**

       Jeremiah Moore, who was formerly incarcerated at SCI Phoenix, filed this civil rights Complaint naming as Defendants the Pennsylvania Department of Corrections ("DOC"), SCI Phoenix, four officials at SCI Phoenix, the DOC's Chief Secretary's Office of Inmate Grievance and Appeals and D. Varner.[1]  Moore also seeks to proceed *in forma pauperis*.  For the following reasons, the Court will grant Moore leave to proceed *in forma pauperis* and dismiss his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

## I.    FACTUAL ALLEGATIONS

       Moore asserts that on February 21, 2021, while he in custody at SCI Phoenix, he sent a request to Defendant Ms. Durand, a Unit Manager on E block, asking to be housed in a different cell with a non-smoker.  Moore informed Durand that he had asthma and exposure to environmental tobacco smoke ("ETS") was placing his health at risk.  (Compl., ECF No. 2, at 3.)  Durand responded that she could not move him at that time.  (*Id*. at 3, 11.)  Moore sent another

---

[1] Moore filed a change of address with the Clerk of Court on September 13, 2021 indicating he was no longer incarcerated at SCI Phoenix, but had been moved to a community correctional center.  (ECF No. 5.)  On December 15, 2021, he filed another change of address indicating he was released to his home.  (ECF No. 7.)

request on February 7, 2021, again complaining that his asthma was bothered by ETS.  (*Id*. at 3 (alleging that ETS was "causing me to suffer to breath"), *see also id.* at 12 (stating in request form that ETS "triggers my asthma with the attacks").  Moore sent a third request to Durand on February 15, 2021, in which he also requested not to be housed with a homosexual inmate "because its [sic] against my religion."  (*Id*. at 3, 13.)   In that request he told Durand he had "multiple asthma attacks" that woke him up at night because he wheezes when he lays down. (*Id*. at 13.)

On February 20, 2021 Moore filed a grievance about Durand's lack of action on his request.  (*Id*. at 3, 14.)  The grievance listed his three request forms to Durand, and stated that Moore had also written to the prison medical department, which was working to get him an asthma inhaler.  (*Id*. at 14.)  His grievance asserted he was being forced to live under unhealthy conditions because his cellmate smoked, and mental health medication Moore took caused him to sleep heavily and made it hard for him to wake up when he felt an asthma attack.  (*Id*.)  The grievance was rejected on February 23, 2021 by Defendant K. Owens on the ground that it was not submitted within 15 working days of the events upon which the claims were based.  (*Id*. at 3, 15.)  Moore's appeal of the denial of the grievance was rejected by Defendant K. Sorber.  (*Id*. at 4, 14.)  Moore then filed a final appeal to the DOC Chief Secretary's Office of Inmate Grievances and Appeals on March 12, 2021.  (*Id*. at 4, 18.)  The final appeal was rejected by Defendant Varner.  (*Id*. at 19.)

Moore asserts that Durant, Owens, Sorber, and Varner each violated his "10th Amendment of the U.S. Constitution by negligence to render relief" by confining him in unhealthy prison conditions.  (*Id*. at 6-7.)  He also asserts each violated his due process rights and inflicted cruel and unusual punishment in violation of his Eighth Amendment rights, and he also

cites the Universal Declaration of Human Rights.  (*Id.*)  Finally, Moore alleges a violation of his

equal protection rights under the Fourteenth Amendment "in the negligence to a serious medical

condition" because his cell assignment was not changed.  (*Id*. at 8.)  Moore seeks a declaration

that his rights were violated, an injunction ordering Defendants to "cease their negligence" and

move him to a cell with a non-smoking, non-homosexual cellmate, and pay him money damages.

(*Id*. at 8-9.)

## II.    STANDARD OF REVIEW

Moore is granted leave to proceed *in forma pauperis*.  Accordingly, 28 U.S.C. §

1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether

a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard

applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher*

*v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether

the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this

early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as

true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that]

complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"

*Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d

768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

Furthermore, the Court must dismiss any claims over which it lacks subject matter jurisdiction.

Fed. R. Civ. P. 12(h)(3).  As Moore is proceeding *pro se*, the Court construes his allegations

liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina,*

*Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

3

### III.   DISCUSSION

Moore seeks money damages and other relief due to alleged violations of his civil rights. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

#### A.   Declaratory and Injunctive Relief

In addition to money damages, Moore seeks a declaration that his rights have been violated and an injunction directing prison officials to house him in with a non-smoking, non-homosexual cell mate.  Both of these forms of relief are improper.  Declaratory relief is unavailable to adjudicate past conduct, so Moore's request for a declaration that his rights were violated in the past is improper.  *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").  A declaratory judgment is also not "meant simply to proclaim that one party is liable to another."  *Corliss*, 200 F. App'x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

The request for prospective injunctive relief is moot since Moore is no longer incarcerated at SCI Phoenix or otherwise in the custody of the Pennsylvania Department of

4

Corrections.  Mootness is a jurisdictional "doctrine that 'ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit,'" and "is 'concerned with the court's ability to grant effective relief.'"  *Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017) (quoting *Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476 (3d Cir. 2016), and *Cty. of Morris v. Nationalist Movement*, 273 F.3d 527, 533 (3d Cir. 2001)).  "[T]he central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief."  *Jersey Cent. Power & Light Co. v. New Jersey,* 772 F.2d 35, 39 (3d Cir.1985) (citation omitted).  Moore's release from custody at SCI Phoenix is such a change in circumstance because his release means that he can no longer be subjected to the conditions of confinement of which he complains, namely exposure to ETS and being housed with a homosexual cellmate, and the Court cannot fashion any form of appropriate injunctive relief.  *Accord Williams v. Sec'y Pennsylvania Dep't of Corr.*, 447 F. App'x 399, 403 (3d Cir. 2011) (finding prospective injunctive relief seeking the elimination of distinctions between sex offenders and other offenders with respect to community correction center placement was moot because prisoner had been released and the condition that he obtain placement in a CCC was waived); *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) (stating that "[a]n inmate's transfer from the facility complained of generally moots the equitable and declaratory claims"); *Marshall v. Pa. Dep't of Corr.*, 499 F. App'x 131, 134 (3d Cir. 2012) (concluding that because Marshall "asked for an injunction that restrains SCI-Mahanoy officials from violating his civil rights, but he has now been transferred out from under their control[,] . . . the District Court was unable to fashion any form of meaningful relief against these defendants, and thus the motion for injunctive relief was

moot"). Accordingly, Moore's requests for declaratory relief is dismissed as not plausible and his request for injunctive relief is dismissed as moot.

**B.  Claims for Money Damages**

**1.  Claims Against the Department of Corrections and its Entities**

Moore seeks money damages against the DOC, the DOC's Chief Secretary's Office of Inmate Grievance and Appeals, and SCI Phoenix. These claims are not plausible. States and their agencies, like the DOC, are not considered "persons" for purposes of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989). Furthermore, the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). The Commonwealth of Pennsylvania has not waived that immunity. *See* 42 Pa. Cons. Stat. § 8521(b). Since the DOC's Chief Secretary's Office of Inmate Grievance and Appeals and SCI Phoenix are both entities within the DOC, they are also entitled to Eleventh Amendment immunity and are not "persons" for purposes of § 1983. *Lavia v. Pennsylvania, Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity" and is also not considered a person for purposes of § 1983); *see also Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012) (*per curiam*) ("[A]s a state agency and the prison it administers, the Department of Corrections and SCI-Albion are not 'persons' and thus cannot be sued under 42 U.S.C. § 1983.").

The Eleventh Amendment serves as "a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir.

1996).  As this dismissal based on Eleventh Amendment immunity is for lack of subject-matter jurisdiction, the dismissal is without prejudice even though Moore cannot reassert another claim for monetary relief against the DOC, the DOC's Chief Secretary's Office of Inmate Grievance and Appeals, or SCI Phoenix in this court.  *See Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 182 (3d Cir. 1999) (agreeing that "a dismissal for lack of subject-matter jurisdiction is not an adjudication on the merits and thus should be ordered 'without prejudice' " (citations omitted)).

### 2.      Exposure to ETS

Although he repeatedly uses the term "negligence" in his Complaint, the Court understands Moore to be asserting constitutional claims against the named Defendants for failing to provide him a smoke-free environment.  Exposure to ETS experienced by a convicted prisoner is analyzed under the Eighth Amendment.  *Murray v. Wetzel*, No. 17-1637, 2021 WL 5500511, at *2 (M.D. Pa. Nov. 23, 2021) ("It is well established that a prisoner can bring a claim under the Eighth Amendment for exposure "to levels of ETS that pose an unreasonable risk of serious damage" to the inmate's health."); *Mearin v. Swartz*, 951 F. Supp. 2d 776, 780 (W.D. Pa. 2013). In order to pass statutory screening on an Eighth Amendment claim based on exposure to ETS, a prisoner must allege plausibly that he has been "exposed to unreasonably high levels of ETS contrary to contemporary standards of decency; and . . . that the authorities were deliberately indifferent to the exposure to ETS.  *Mearin*, 951 F. Supp. 2d at 780-81 (citing *Brown v. U.S. Justice Dep't,* 271 F. App'x 142, 144 (3d Cir. 2008) (citing *Helling v. McKinney,* 509 U.S. 25, 35 (1993))).  The prisoner must allege plausibly that the official was "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*. (citing *Wilson v. Burks,* 423 F. App'x 169, 173 (3d Cir. 2011), *quoting Farmer v. Brennan,* 511 U.S. 825, 837 (1994)).

Moore's allegations fail to meet this standard, and the claim must be dismissed.  While he asserts that he asked Defendant Durand to change his cell assignment because exposure to ETS placed his health at risk, and his asthma was bothered by ETS, he fails to allege that the level of ETS to which he was exposed was unreasonable, contrary to contemporary standards, or excessive.  *Compare, e.g., Helling,* 509 U.S. at 35 (holding that bunking with a cellmate who smoked five packs of cigarettes per day exposed an inmate to an unreasonable risk of future harm from ETS exposure), and *Atkinson v. Taylor,* 316 F.3d 257, 259 (3d Cir. 2003) (holding that a prisoner who claimed that he had shared a cell with constant smokers for many months stated a claim for a violation of a clearly established right), with *Richardson v. Spurlock,* 260 F.3d 495, 498 (5th Cir. 2001) (holding that sitting near some smokers sometimes is not an unreasonable exposure to ETS) and *Pryor-El v. Kelly,* 892 F. Supp. 261, 267 (D.D.C. 1995) (dismissing an ETS claim in which the plaintiff alleged "only that various unnamed inmates and prison officials smoke 'in the TV room, games room, and the letter writing room'").  *See also Carroll v. DeTella,* 255 F.3d 470, 472 (7th Cir. 2001) ("The Eighth Amendment does not require prisons to provide prisoners with more salubrious air . . . than are enjoyed by substantial numbers of free Americans.").

Moreover, Moore's assertions that his asthma was "bothered" by ETS, that ETS was "causing [him] to suffer to breath," that it "triggers my asthma with the attacks," and he had "multiple asthma attacks" that woke him up at night (*see* Compl. at 3, 12, 13), is markedly less detailed than those situations where courts have found that symptoms of ETS exposure were sufficient to pass the plausibility threshold.  *See, e.g., Murry*, 2021 WL 5500511, at *3 (noting diagnosis of "allergic rhinitis . . . from smoke exposure triggering mucus production"; "constant heavy mucus/sputum build up in [his] chest area and nostrils," "difficulty breathing during

exertion," "mucus build-up in his nose, throat, chest and lungs," post-nasal drip and cough, and "mild hypertrophy" and "congestion" in his nose; and that he repeatedly treated for these conditions (including having a chest X-ray and bloodwork performed); *Atkinson*, 316 F.3d at 268 (allegations of "nausea, inability to eat, headaches, chest pains, difficulty breathing, numbness in his limbs, teary eyes, itching, burning skin, dizziness, sore throat, coughing and production of sputum" sufficient); *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (allegations of aggravation of asthma sufficient where prisoner alleged his asthma medication had to be increased); *Weaver v. Clarke*, 45 F.3d 1253, 1254, 1256 (8th Cir. 1995) (allegations of "severe headaches, dizziness, nausea, vomiting, and breathing difficulties" sufficient); *Brown v. DiGuglielmo*, 418 F. App'x 99, 102 (3d Cir. 2011) (*per curiam*) (allegations of "sinus congestion, headaches, tightness of the lungs, and difficulty breathing" sufficient); *Mearin*, 951 F. Supp. 2d at 781 (allegations of "coughs, headaches, chest pains, shortness of breath, vomiting, and fatigue" sufficient); *but see Torres v. Beard*, No. 08-200, 2009 WL 1684682, at *1, *7 (W.D. Pa. June 16, 2009) (allegation of exacerbation of asthma found sufficient).  Finally, Moore's ability to assert a plausible claim of unreasonable exposure must be viewed in light of his allegation that the exposure began in February 2021, but he was released from SCI Phoenix in September 2021.  *See Oliver v. Deen*, 77 F.3d 156, 160-61 (7th Cir. 1996) (summary judgment granted dismissing Eighth Amendment medical indifference claim where prisoner's medical records evaluated his asthma as only a mild case and he received medication and an inhaler, and record showed he shared a cell with a smoker for only 133 days).  Nonetheless, because the Court cannot say at this time that Moore can never allege a plausible Eighth Amendment claim against Durand based on unreasonable exposure to ETS, the dismissal of this claim will be

without prejudice and Moore will be provided the opportunity to file an amended complaint to flesh out his allegations in order to cure the defects in his ETS claim.

### 3.    Claims Based on Grievance Process

Intertwined with his allegations of exposure to ETS and his attempts to have Durand change his cell assignment, Moore asserts that his grievance about the failure to change his cell was denied at all levels by the other named individual Defendants.  He also alleges in conclusory fashion that his due process rights were violated.  To the extent that Moore asserts a separate constitutional claim based on the handling by the Defendants of his grievance over his lack of reassignment, that claim is not plausible and will be dismissed with prejudice.

Claims based on the handling of prison grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (*per curiam*); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (*per curiam*).  Additionally, the handling of a prisoner's grievance is generally insufficient to show personal involvement to in the underlying violation.  *See also Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("[B]ecause a prisoner has no free-standing constitutional right to an effective grievance process, [a prisoner] cannot maintain a constitutional claim . . . based upon his perception that [the defendant] ignored and/or failed to properly investigate his grievances." (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991))).  Moreover, to the extent Moore seeks to hold prison officials who were involved in his grievance process liable on his underlying ETS exposure claim, that too fails to allege a plausible claim.  *See Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (*per curiam*) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability

based on those later grievance reviews."); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019)

(*per curiam*) ("The District Court properly determined that Defendants [Superintendent]

Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances –

lacked the requisite personal involvement [in the conduct at issue].").  Accordingly, the facts

alleged by Moore about grievances do not give rise to a plausible basis for a constitutional claim.

The dismissal of the grievance claims will be with prejudice since any attempt at amendment

would be futile.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).

### 4.     Medical Indifference Claims

Although Moore mentions that exposure to ETS placed his health at risk and mentions he

contacted the prison medical department to get an asthma inhaler, it is not entirely clear if seeks

to also raise a separate claim that any of the named Defendants, none of whom are medical

providers, were deliberately indifferent to his serious medical needs.  To state a constitutional

claim based on the failure to provide medical treatment, a prisoner must allege facts indicating

that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer*, 511

U.S. at 835.  A prison official is not deliberately indifferent "unless the official knows of and

disregards an excessive risk to inmate health or safety; the official must both be aware of facts

from which the inference could be drawn that a substantial risk of serious harm exists, and he

must also draw the inference."  *Id.* at 837.  "A medical need is serious, . . . if it is one that has

been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person

would easily recognize the necessity for a doctor's attention."  *Monmouth Cty. Corr. Institutional

Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  Deliberate

indifference is properly alleged "where the prison official (1) knows of a prisoner's need for

medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment

based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

Moore does not assert that any of the named Defendants refused, delayed, or prevented him from receiving needed or recommended medical treatment. Any such claim is, therefore, not plausible. Moreover, "[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (*per curiam*) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff."). However, because the Court cannot say that Moore can never assert a plausible deliberate indifference claim, the dismissal will be without prejudice and Moore will be afforded the opportunity to amend this claim as well.

5.        **First Amendment Religion Claim**

It is also unclear whether Moore is asserting a separate claim that his First Amendment freedom of religion rights were violated.  His third request to Defendant Durand for a cell reassignment on February 15, 2021 also requested not to be housed with a homosexual inmate "because its [sic] against my religion."  (Compl. at 3, 13.)  He also mentioned this request in several grievance forms.  To the extent Moore attempts to raise a religious freedom claim, it is not plausible.

Although inmates retain certain protections afforded by the First Amendment, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (quotations omitted).  While federal courts must take cognizance of valid constitutional claims of prison inmates, the Supreme Court has repeatedly cautioned that the task of prison administration has been committed to the responsibility of the legislative and executive branches of government, and that federal courts should be reluctant to second guess these authorities.  *See, e.g., Turner v. Safley*, 482 U.S. 78, 84 (1987); *O'Lone*, 482 U.S. at 353.  Importantly, "those courts confronted with the question of whether inmates have a constitutional right to choose a cellmate have held that no such right exists."  *Murray v. Bledsoe*, 650 F.3d 246, 247 (3d Cir. 2011) (citing *Harris v. Greer*, 750 F.2d 617, 618 (7th Cir. 1984), and *Cole v. Benson*, 760 F.2d 226, 227 (8th Cir. 1985) (*per curiam*)); *see also Drayton v. Cohen*, No. 10-3171, 2012 WL 666839, at *6 (D.S.C. Feb. 29, 2012) ("For obvious reasons, courts have widely rejected any notion that a prisoner has any constitutional right to choose his cellmate"), *aff'd*, 474 F. App'x 991 (4th Cir. 2012).  Courts have also rejected claims based on cell, or cellmate, assignments even where the assignment allegedly had an adverse effect on the inmate's ability to

13

practice his religion.  For example, in *Ochs v. Thalacker*, 90 F.3d 293 (8th Cir. 1996), the United

States Court of Appeals for the Eighth Circuit held that state prison "officials properly rejected

Ochs's request for racially segregated living quarters *even if* that substantially burdened his

sincerely held religious beliefs," since the defendants' decisions as to cell assignments

implicated institutional security, and "allowing such exceptions would create serious

administrative and security problems."  *Id*. at 296-97 (emphasis added).  Accordingly, any

religion claim for money damages based on Moore's being housed with certain cellmates is

dismissed with prejudice.

### 6.    Claims Based on the Universal Declaration of Human Rights

Moore invokes the Universal Declaration of Human Rights as a basis for his claims.  As

the United States Court of Appeals for the Third Circuit has recognized, "the Universal

Declaration of Human Rights is a non-binding declaration that provides no private rights of

action."  *See United States v. Chatman*, 351 F. App'x 740, 741 (3d Cir. 2009) (citing *Sosa v.*

*Alvarez-Machain*, 542 U.S. 692, 734 (2004)) (explaining that the Universal Declaration of

Human Rights is merely a resolution of the United Nations and "does not of its own force

impose obligations as a matter of international law").  District courts throughout this Circuit have

routinely dismissed claims brought under the Universal Declaration of Human Rights with

prejudice for failure to state a claim or as legally frivolous.  *See, e.g.*, *Best v. S.C.I. Huntingdon*,

No. 19-01599, 2019 WL 5866707, at *5 (M.D. Pa. Oct. 9, 2019), *report and recommendation*

*adopted*, 2019 WL 5868259 (M.D. Pa. Nov. 8, 2019) (recommending dismissal of claims under

the Universal Declaration of Human Rights for failure to state a claim upon which relief can be

granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1) in a prisoner civil rights

action); *Hamilton v. Dolce*, No. 18-2615, 2019 WL 4509375, at *3 (D.N.J. Sept. 19, 2019)

(dismissing with prejudice *pro se* prisoner's claims for violations of the Universal Declaration of Human Rights); *Pavalone v. Pres. Mgmt. Inc.*, No. 18-191, 2019 WL 1117931, at *3 (M.D. Pa. Jan. 8, 2019), *report and recommendation adopted*, 2019 WL 1117919 (M.D. Pa. Mar. 11, 2019) (recommending dismissal of non-prisoners' claims for the "alleged violation[s] of their rights under the Universal Declaration of Human Rights . . . as legally frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)). Accordingly, to the extent Moore raises claims against the Defendants for violating the Universal Declaration of Human Rights, they are dismissed with prejudice as any amendment would be futile.

### 7.      Negligence Claims

While negligence is not a constitutional standard, *see Daniels v. Williams,* 474 U.S. 327, 328 (1986) (holding that official's mere negligence is not actionable under § 1983 because "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property"), read liberally Moore may be seeking to assert state law claims in his Complaint based on the negligence of the Defendants. Because the Court has dismissed his federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting

*Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).  An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment."  *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010).  It is the plaintiff's burden to establish diversity of citizenship.  *See Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, C.A. No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Moore does not allege the citizenship of the parties.  Rather, he provides only Pennsylvania addresses for himself and the Defendants, which suggests that he and some, if not all, of the Defendants may be Pennsylvania citizens.  Accordingly, Moore has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law negligence claims he intends to pursue.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Moore's Complaint in part with prejudice and in part without prejudice.  His claims for declaratory relief, as well as all claims based on the handling of prison grievances, a violation of his First Amendment freedom of religion, and a violation of the Universal Declaration of Human Rights are dismissed with prejudice.  Moore's claim against Defendant Durand based upon exposure to ETS and any claim asserting deliberate indifference to a serious medical need are dismissed without prejudice.  His

moot claim for injunctive relief, his claims against the DOC, the DOC's Chief Secretary's Office of Inmate Grievance and Appeals, SCI Phoenix, and all state law negligence claims are dismissed without prejudice for lack of subject matter jurisdiction.  An appropriate order follows giving Moore instructions on filing an amended complaint if he seeks to reassert his ETS claim.

**BY THE COURT:**

**/s/ Juan R. Sánchez**
**JUAN R. SÁNCHEZ, C.J.**