IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEREMIAH MOORE | : | CIVIL ACTION |
| | : | |
| v. | : | No. 21-2695 |
| | : | |
| MS. DURAND | : | |

<u>**MEMORANDUM**</u>

**Judge Juan R. Sánchez**                                                                                **January 9, 2025**

      Defendant Ms. Durand, a Unit Manager at the State Correctional Institution at Phoenix (SCI Phoenix), where Plaintiff Jeremiah Moore was previously detained, moves to dismiss Moore's present-injury environmental tobacco smoke (ETS) exposure claim against her. Durand argues the claim must be dismissed because Moore failed to properly exhaust it before filing this lawsuit in 2021. To properly exhaust a claim for damages under the applicable prison grievance policy, Moore was required to request compensation in his initial grievance. Because Moore did not request compensation in the prison grievance process, his claim for damages for ETS exposure in his original complaint is not properly exhausted. Therefore, the motion to dismiss will be granted.

**BACKGROUND**

      This case is before this Court on remand from the Third Circuit Court of Appeals. After this Court dismissed Moore's original and amended complaints for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii),[1] Moore appealed. The Court of Appeals upheld the dismissal with

---

[1] Upon screening Moore's original complaint, the Court dismissed without prejudice Moore's claims against Durand based on exposure to ETS and deliberate indifference to his serious medical needs, and granted him leave to file an amended complaint. ECF No. 11 at 1-2. Moore elected to file an amended complaint, but the Court found the "extremely brief" allegations of that pleading insufficient to state a plausible claim based on ETS exposure and dismissed the amended complaint with prejudice. ECF No. 13 at 8-11.

one exception: the Court found Moore's original complaint stated a claim against Durand for violating his rights under the Fourteenth Amendment[2] through her deliberate indifference to his serious medical needs relating to ETS exposure.  *See Moore v. Durand*, No. 22-2915, 2023 WL 4884855 (3d Cir. Aug. 1, 2023).  Specifically, the Court of Appeals held Moore had stated a plausible present-injury ETS exposure claim against Durand based on his allegations in his original complaint that (1) his exposure to ETS in his assigned cell "aggravated his chronic asthma, which caused him to suffer difficulty breathing, woke him up at night, required medical officials to examine whether an additional inhaler was necessary, and interfered with his medication for an unrelated mental health concern," (2) the prison medical department advised him to request a cell change from his unit manager, (3) he sent Durand multiple requests for a new cell assignment based on his asthma and adverse reactions to ETS from his cellmate smoker, and (4) he was not reassigned to a cell with a non-smoking cellmate.  *Id.* at *2.  The Court of Appeals thus vacated the dismissal of Moore's present-injury ETS exposure claim against Durand and remanded the case for further proceedings.  *Id.*

On remand, this Court ordered the Clerk of Court to issue a summons for Ms. Durand and directed Moore to complete a USM-285 form so the United States Marshals Service could serve Durand with his original complaint.  ECF No. 24.  Moore eventually returned the required USM-285 form, and Durand accepted service electronically on July 22, 2024.[3]  ECF No. 32.  On August

---

[2] Because Moore was a pretrial detainee at the time of the events underlying his lawsuit, his present injury ETS exposure claim is analyzed under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment.

[3] Service was delayed initially because the order directing Moore to return a completed USM-285 form was not mailed to him and, later, because Moore relocated but did not notify the Court of his change of address.  *See* ECF Nos. 27, 29, 30.  Moore has since advised the Court of his new address, and the docket has been updated accordingly.

23, 2024, Durand filed the instant motion to dismiss, arguing Moore's present-injury ETS exposure claim should be dismissed because Moore failed to comply with the Prison Litigation Reform Act's (PLRA) exhaustion requirements. Durand argues Moore failed to properly exhaust his claim because he did not request compensation in his prison grievances as required under the Department of Corrections' Official Inmate Grievance System.[4] Although the certificate of service accompanying the motion to dismiss indicates the motion was mailed to Moore at his updated address on August 23, 2024, Moore has not responded to the motion.

**DISCUSSION**

The PLRA's exhaustion requirement is set forth in 42 U.S.C. § 1997e(a), which provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is a prerequisite for federal actions "with respect to prison conditions," 42 U.S.C. § 1997e(a), a term that "covers challenges to everything from generally applicable prison policies to single incidents of mistreatment, including 'excessive force or some other wrong' committed against the plaintiff-prisoner alone." *Talley v. Clark*, 111 F.4th 255, 262 (3d Cir. 2024) (quoting *Porter v. Nussle*, 534 U.S. 516, 632 (2002)).

---

[4] In his original complaint, Moore sought damages, a declaration that his rights had been violated, and an injunction directing Defendants to house him with a non-smoking cellmate. Compl. 8-9, ECF No. 2. This Court previously found Moore's request for declaratory relief improper because such relief is unavailable to adjudicate past conduct. Mem. 4, ECF No. 10. The Court also found Moore's request for injunctive relief was moot following his release from state custody. *Id.* at 4-6. There is no indication the Court's rulings on these issues were challenged on appeal. The Court therefore construes Moore's present-injury ETS exposure claim as limited to a claim for damages.

3

By its terms, the exhaustion requirement extends only to actions "brought . . . by a prisoner confined in any jail, prison, or other correctional facility." 42 U.S.C. § 1997e(a). A prisoner who files a timely complaint after his release from prison is "free of the strictures of the PLRA," including the exhaustion requirement. *Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002). Similarly, a plaintiff who files an amended or supplemental complaint after being released from prison is not subject to the PLRA's exhaustion requirement, so long as the new pleading relates back to the original complaint. *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 308-09 (3d Cir. 2020); *Garrett v. Wexford Health*, 938 F.3d 69, 84 (3d Cir. 2019). In such circumstances, the amendment supersedes the original pleading, and the plaintiff's "change in status (i.e., his release) operates to cure the original filing defect (i.e., his failure to exhaust administrative remedies)." *Garrett*, 938 F.3d at 88.

Here, as noted, Moore commenced this action while detained at SCI Phoenix, and his original complaint was dismissed on initial screening, with leave to amend. Moore later filed an amended complaint the day after he was released from prison. *See* ECF No. 12 at 4. On appeal, however, Moore challenged the dismissal of both his original and his amended complaints. Addressing both challenges, the Court of Appeals found that only Moore's original complaint stated a present-injury ETS exposure claim against Durand and remanded the case for further proceedings as to that claim. *Moore*, 2023 WL 4884855, at *2 (finding "the factual allegations contained in Moore's *original complaint* are sufficient to plausibly assert [a present-injury ETS] claim" and holding the district court "appears to have erred in concluding that Moore's *original complaint* failed to sufficiently allege Defendant Durand's deliberate indifference" (emphasis added)). Given the appellate court's ruling, this Court concluded Moore's original complaint was the operative complaint, notwithstanding the amendment, and directed that service of the original

4

complaint be made on Durand by the Marshals Service.  *See* ECF Nos. 24, 30.  Because the original complaint is the operative complaint, Moore's status at the time he filed the amended complaint is not controlling as to the exhaustion analysis.  Rather, because Moore filed the operative complaint while detained at SCI Phoenix, the Court concludes the exhaustion requirement applies in this case.  *See Sanders v. Marler*, No. 18-5477, 2022 WL 2703597, at *4 n.5 (E.D. Pa. July 12, 2022).

"The PLRA requires 'proper exhaustion.'"  *Talley*, 111 F.4th at 262 (quoting *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)).  To satisfy this requirement, a prisoner-plaintiff "must complete the administrative review process in accordance with the prison's grievance policies."  *Id.* at 262-63.  The applicable grievance policies here are set forth in Pennsylvania Department of Corrections' Policy No. DC-ADM 804 and its accompanying procedures manual, which outline a three-step grievance process that inmates must follow.[5]

At the first step, the inmate must submit a grievance to the Facility Grievance Coordinator using the DC-804 Part 1 form.  DC-ADM 804, Inmate Grievance System Procedures Manual (hereinafter "Procedures Manual") 1-1, § 1.A.5., ECF No. 35-1.  The grievance "must include a statement of the facts relevant to the claim" and must provide certain other information.  *Id.* 1-2, § 1.A.11.  Of particular relevance here, "[i]f the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance."  *Id.* 1-2, § 1.A.11.d.  Consistent with this requirement, the DC-804 Part 1 form instructs the inmate to "[p]rovide a brief clear statement of your grievance" and to "[s]tate all relief that you are seeking."  Compl. Ex. D, ECF No. 2 at 14.  The initial grievance is then reviewed by the Facility Grievance Coordinator (or a designee), who must determine whether it is properly

---

[5] The Policy and procedures manual are available online and are also attached as Exhibit 1 to Durand's motion to dismiss.  *See* ECF No. 35-1.  They have been in effect since May 2015.

5

submitted in accordance with the procedures manual. Procedures Manual 1-6, § 1.C.3. If the grievance is not properly submitted, the Facility Grievance Coordinator must reject it and return it to the inmate, who may resubmit it. *Id.* at 1-4, § 1.A.20.; 1-7, § 1.C.4. If the grievance is properly submitted, it is reviewed by a Grievance Officer, who must provide the inmate with a response. *Id.* at 1-6 to 1-8, § 1.C.3., 5., 6.

At the second step, the inmate may appeal the initial review response to the Facility Manager, who must decide the appeal and provide a brief statement of the reasons for the decision. *Id.* at 2-1 to 2-2, § 2.A.

At the third step, the inmate may appeal the Facility Manager's decision to the Secretary's Office of Inmate Grievances and Appeals (SOIGA). *Id.* at 2-4 to 2-7, § 2.B.1. After review of the original grievance, the initial review response/rejection, the appeal to the Facility Manager, the Facility Manager's appeal response, any investigative reports and attached exhibits, and the appeal to final review, SOIGA must issue a final decision to the inmate in the case. *Id.* at 2-7, § 2.B.2.

Although exhaustion of prison remedies is an affirmative defense, which "inmates are not required to specially plead or demonstrate . . . in their complaints," *Jones v. Bock*, 549 U.S. 199, 216 (2007), Moore's Complaint contains a detailed discussion of his efforts to exhaust his claims and includes copies of his grievance papers and the responses he received as exhibits, Compl. ¶¶ 21-27 & Exs. A-I, ECF No. 2. The Court may properly consider exhibits attached to a complaint at the motion to dismiss stage, *see, e.g.*, *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020), and may dismiss a case for failure to exhaust under the PLRA where the failure is "apparent from the face of the complaint," *Talley*, 111 F.4th at 264 (quoting *Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002)); *see also Rinaldi v. United States*, 904 F.3d 257, 261 n.1 (3d Cir. 2018) (noting a court may consider "indisputably authentic documents related to [an inmate's] grievances" in

deciding a motion to dismiss for failure to exhaust without converting the motion into one for summary judgment (citation omitted)).

Moore submitted his original grievance on a DC-804 Part 1 form on February 20, 2021, stating he was being forced to live under conditions unhealthy to his well-being. Compl. Ex. D, ECF No. 2 at 14. The grievance explained Moore had asthma yet was housed with a cellmate who smoked. *Id.* Moore also alleged the second-hand smoke was becoming unbearable, causing him to suffer increased coughing, wheezing, asthma attacks, and difficulty breathing, and was preventing him from taking his "psychologic medication." *Id.* The grievance requested that prison officials "[p]lease provide me with the relief I need to stop the second hand smoking"[6] but made no reference to compensation or damages. *Id.* On February 23, 2021, Moore's grievance was rejected. *Id.* Ex. E, ECF No. 2 at 15. Rather than re-submit the grievance, Moore appealed it, first to the Facility Manager and then to SOIGA. *Id.* Exs. F, H, ECF No. 2 at 16, 28. Like the original grievance, the appeals requested only a cell change, not compensation. *Id.*

Durand argues Moore failed to properly exhaust prison remedies as to his § 1983 claim for damages because he did not comply with the requirement to request compensation in his initial grievance. The Court agrees. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *see also Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004) ("[P]rison grievances procedures supply the yardstick for measuring procedural default."). As explained above, the applicable prison grievance policy here specifically provides that if an inmate "desires compensation or other relief normally available from a court, the inmate

---

[6] The grievance noted prison medical staff had advised Moore to speak with his unit manager "for a cell change to a non-smoking [cellmate]," but stated his requests to his unit manager had been disregarded. Compl. Ex. D, ECF No. 2 at 14.

*must* request the specific relief sought in his/her initial grievance." Procedures Manual 1.2, § 1.A.11.d. (emphasis added). The requirement to specify the relief sought in the initial grievance is mandatory. Because Moore failed to request damages in the grievance process, his § 1983 claim for such relief is not properly exhausted. *See, e.g.*, *Miller v. Little*, No. 23-2037, 2024 WL 957983, at *2 (3d Cir. Mar. 6, 2024) (affirming dismissal of inmate's claims for money damages as unexhausted because inmate "did not request money damages in his initial grievance"; *Walker v. Little*, No. 22-3451, 2023 WL 2570562, at *1-2 (3d Cir. Mar. 20, 2023) (same); *Stanley v. Little*, Civ. No. 23-4571, 2024 WL 3678987, at *5 (E.D. Pa. Aug. 6, 2024) (same).

The Third Circuit's decision in *Spruill v. Gillis* is also instructive. In that case, the Court of Appeals addressed the same exhaustion issue presented here under an earlier version of DC-ADM-804, which permitted—but did not require—inmate grievances to specify the relief sought in a grievance. 372 F.3d at 233 (noting "[t]he inmate *may* include a request for compensation or other legal relief normally available from a court" in a grievance (emphasis added) (citation omitted)). Because the policy made it optional to request compensation as part of the grievance process, the Court of Appeals held a plaintiff need not request damages administratively in order to properly exhaust a claim for such relief. *See id.* at 233-34. The Court noted, however, that to the extent that prison officials were dissatisfied with its procedural default ruling, they were free to "alter the grievance system to require more (or less) of inmates by way of exhaustion." *Id.* at 235. Following the decision, the Department of Corrections did just that, amending the grievance policy to require inmates to "request the specific relief sought." Procedures Manual 1-2, § 1.A.11.d.; *see also Walker*, 2023 WL 2570562, at *1 (noting the grievance policy was amended in response to *Spruill*).

8

The grievances appended to Moore's Complaint show that he did not request damages via the prison grievance process and thus failed to properly exhaust his claim for damages in this case. Having failed to respond to the motion to dismiss, despite having been provided a copy, Moore has provided no reason why an exception to exhaustion applies. *See Ross v. Blake*, 578 U.S. 632, 643-44 (2016) (discussing the circumstances in which exhaustion is not required because administrative remedies are not "available"). Accordingly, the motion to dismiss will be granted, and Moore's present-injury ETS exposure claim against Ms. Durand will be dismissed.

An appropriate order follows.

                                                BY THE COURT:

                                                /s/ Juan R. Sánchez
                                                Juan R. Sánchez, J.